Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff and all others similarly situated*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

PERRY BRUNO, individually, and on behalf of other members of the general public similarly situated,

Plaintiff,

vs.

GALDERMA LABORATORIES, L.P.,

Defendant.

Case No. 2:26-cv-01829-FLA-DSR

**FIRST AMENDED CLASS ACTION COMPLAINT**

(1) Violation of False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq.*) and
(2) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*)
(3) Violation of Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*)

**Jury Trial Demanded**

Plaintiff PERRY BRUNO ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## PRELIMINARY STATEMENTS

1. This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq*., Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*, and Violation of Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*) resulting from the illegal actions of Defendant, in intentionally labeling its skincare products with false and misleading claims that they are oil-free, when Defendant's products contain numerous oils. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

2. Defendant removed this case to the District Court of the Central District of California alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $5,000,000.00 in which members of the class are citizens of a State different from the Defendant.

3. This court has personal jurisdiction over Defendant, because Defendant does business within the State of California and County of Los Angeles.

4. This Court is the proper venue because Defendant does business *inter alia* in this District and a significant portion of the conduct giving rise to Plaintiff's claims happened here.

**PARTIES**

5. Plaintiff is an individual and citizen of California who was at all relevant times residing in Los Angeles, California.

6. Defendant is a Texas limited partnership whose principal place of business is located in Dallas Texas.

7. At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of skincare products.

**FACTS COMMON TO ALL COUNTS**

8. Defendant manufactures, advertises, markets, sells, and distributes skin care products throughout California and the United States under brand name "Cetaphil"

9. During the Class Period Defendant sold its Cetaphil Daily Hydrating Lotion products (the "Products") as "Oil Free" then those Products contained Dicaprylyl Carbonate, Cyclopentasiloxane, and Caprylyl Glycol.

10. On June 18, 2025, Plaintiff purchased a Product from a Target located in North Hollywood, California. Plaintiff paid $14.99 for his oil-free Product.

11. All of the Products contain oils, but Defendants intentionally advertise and label the Products as oil-free.

12. When purchasing Defendant's products Plaintiff made his purchasing decision because of the labeling on the products which read "oil-free".

13. The following is a picture of Defendant's Product showing the oil-free label:



14. Plaintiff is drawn to oil-free labeling for multiple reasons, including but not limited to the following: Plaintiff does not like the way oil feels on his skin, Plaintiff is concerned that oils in his skincare products will cause him to develop blackheads and other forms of acne, and Plaintiff does not like the residue often left by oils.

15. All of Plaintiff's reasons for being drawn oil-free labeling are based on the same common fact that oil-free products do not contain oils.

16. When Plaintiff purchases oil-free products he interprets the statement "oil-free" to mean the products he is purchasing are free of oils and will not contain any ingredients that have all of the following qualities: liquid at room temperature, more viscous but less dense than water, do not mix with water, and slick or slippery to the touch.

17. In other words, Plaintiff, like any reasonable consumer, understands oils to be substances that look, feel, and interact with water the way common oils, such as olive oil, vitamin e oil, or castor oil, do and Plaintiff expected that when he bought oil-free products they would not contain any substances that can be characterized as oils based on the way they look, feel, and interact with water.

18. Plaintiff has experienced dissatisfaction with the Products due to the Products feelings oily and greasy, and leaving an unpleasant residue on his skin.

19. Plaintiff did not understand that the Products contained oils when he purchased them.

20. Furthermore, due to Defendant's intentional, deceitful practice of labeling the Products as oil-free Plaintiff could not have known that the Products contained oils.

21. By making false and misleading claims about the qualities of the Products, Defendant impaired Plaintiff's ability to choose the type and quality of the Products he chose to buy.

22. Plaintiff's experience is reflective of the experience of other consumers. For example, one similar consumer commented that "…I found this lotion to be very greasy. It has made my face break out more than it usually does. I naturally have oily combination skin, so this extra greasiness has only made it worse."[1]

23. As a result of Defendant's fraudulent labeling Plaintiff has lost money because Plaintiff paid Defendant a premium price of $4.99 per ounce of moisturizer, when other moisturizers without "oil-free" labeling are sold for $0.49 per ounce.[2]

24. Producers of consumer products, like Defendant, use consumer product labeling to increase consumer demand for products based on the perceived features or benefits of the products thereby increasing the price producers can charge for their products and/or the quantity they can sell.

---

[1] Amazon.com Customer Reviews of Product B01MG4PSK4, *Amazon.com*, https://www.amazon.com/product-reviews/B01MG4PSK4 (last visited Mar. 19, 2026).

[2] *Amazon Basics Moisturizing Daily Body Lotion, 24.5 fl oz*, AMAZON, https://www.amazon.com/dp/B0BTX3FBDX (last visited January 8, 2026).

25. Defendant by including "oil free" labeling increased consumer demand for the Products by incentivizing consumers to purchase them to receive desirable product features.

26. However, the "oil free" label on Defendant's Products is misleading, and consumers have been therefore deprived of that product feature. As a result, Defendant has been able to sell the Products at a greater price and/or in greater quantity than if Defendant did not include the challenged labeling, but without providing consumers with the promised product feature. Stated otherwise, Defendant coerced consumers to base their purchasing decision in material part on false claims, thereby fraudulently, deceptively, and unfairly increasing consumer demand for the product. Defendant profited from these acts by extracting additional funds from consumers than otherwise would not have been paid for Class Products, and also harmed competitors by luring would-be consumers of competitive products away from law-abiding products that were not so falsely advertised

27. Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the inclusion of ingredients in those products.

28. By making false and misleading claims about the ingredients contained in their products Defendant impaired Plaintiff's ability to choose the type and quality of products he chose to buy.

29. Therefore, Plaintiff has been deprived of his legally-protected interest to obtain true and accurate information about his consumer products as required by law.

30. Oil is a term that describes a material that is both hydrophobic and lipophilic. Oil can also be classified by the polarity of the material. Oils can be wholly non-polar such as hydrocarbons, or polar such as fatty acids. Oil comprises the following chemical functional groups:[3]

a. hydrocarbons (alkanes, alkenes) —such as squalane commonly sold as squalane oil;

b. triglycerides—such as glycerol tristearate also known as stearin;

c. esters—such as ester oil;

d. fatty acids—such as palmitic acid;

e. certain silicones—such as alkyl dimethicone

f. fatty alcohols-sterols like cholesterol

31. All of the above functional groups can be generally characterized by the same physical properties commonly observed in oils by laypersons including being less dense than water, being more viscous than water, not mixing with water, and feeling slick or slippery to the touch.

32. All of the following ingredients have been named in this Complaint precisely because they look like oils, feel like oils, interact with water like oils, and

[3] Tony O'Lenick, Polar vs. Nonpolar oils, 2008. https://www.cosmeticsandtoiletries.com/research/chemistry/17390254.html

match the above chemical definition of oil; and therefore are substances that a reasonable consumer would not expect to be in products labeled as oil-free.

33. Cyclopentasiloxane is defined as a polysiloxane. Cyclopentasiloxane contains the silicone (siloxane) functional group. It would be defined as a polar oil. The compound has a density of 0.96 g/mL, compared to water's 1g/mL.

34. Dicapyryl carbonate is a clear colorless oil with a density of 0.89 g/mL compared to water's 1g/mL. Dicapyryl carbonate contains hydrocarbon functional groups. It would be defined as a nonpolar oil.

35. Caprylyl glycol is a colorless oil with a density of with a density of 0.937 ± 0.06 g/mL compared to water's 1g/mL. Caprylyl glycol contains alcohol and hydrocarbon functional groups.

36. Plaintiff purchased Defendant's Products because Defendant's packaging claims that their Products are oil-free.

37. Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they use on their bodies.

38. Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products' express labeling stating "Oil-Free" was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members

would not be able to tell the Products' contained oils unless Defendant expressly told them.

39. Defendant employs professional chemists to create the chemical formulas of Defendant's products. Therefore, Defendant through its employees knew or should have known that the Products contained oils and that by labeling the Products as oil-free they were deceiving consumers.

40. On information and belief, Defendants through their employees did know that the Products contained oils but chose to include "oil-free" labeling because they did not believe their customers were well educated enough to know the difference.

41. If Defendant is allowed to continue this behavior other similarly situated members of the California general public will continue to be exposed to Defendant's misleading and unlawful conduct. Therefore, Defendant's mislabeling practices represent an ongoing public harm.

42. As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

a. Lost money as a result in a shift of the consumer demand curve which increases consumer demand, the number of units sold, and the price of the Products;

b. Wasting Plaintiff's time; and

c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

43. Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of the original Complaint through to the date of class certification.

44. Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows:

> All persons within California who purchased the Products within four years prior to the filing of the original Complaint through to the date of class certification.

45. Defendants, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

46. The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their

members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

47. This suit is properly maintainable as a class action because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

48. There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

a. Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by including the statement "oil-free" on the front of the Products' packaging;

b. Whether the Class and Sub-Class members were informed of the oils contained in the Products;

c. Whether the Products contain oils;

d. Whether Defendant's conduct was unfair and deceptive;

e. Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

f. Whether the statement "oil-free" is misleading or false;

g. Whether there should be a tolling of the statute of limitations; and

h. Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

49. As a resident of the United States and the State of California who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

50. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

51. Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

52. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would

proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

53. The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

54. Plaintiff's claims and injuries are identical to the claims and injuries of all class and sub-class members, because all claims and injuries of all class and sub-class members are based on the same false labeling, and same legal theory. All allegations arise from the identical, false, affirmative written statements made by Defendants when they claimed the Products were oil-free, when in reality the Products contained oils.

55. Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

56. The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

**FIRST CAUSE OF ACTION**
**Violation of the California False Advertising Act**
**(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**

57. Plaintiff incorporates by reference each allegation set forth above.

58. Pursuant to California Business and Professions Code section 17500, *et seq*., it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

59. California Business and Professions Code section 17500, *et seq*.'s prohibition against false advertising extends to the use of false or misleading written statements.

60. Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold the Products advertised to be oil-free fully knowing the Products contained oils, and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

61. Specifically, Defendant wrote on the packages of these Products that they were oil-free.

62. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members.

63. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property. Plaintiff reasonably relied upon Defendant's representations regarding the Products, namely that they were oil-free. In reasonable reliance on Defendant's false advertisements, Plaintiff and other Class Members purchased the Products. In turn Plaintiff and other Class Members ended up with skincare products that turned out to actually be different than advertised, and therefore Plaintiff and other Class Members have suffered injury in fact.

64. Plaintiff alleges that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

65. Defendant advertised to Plaintiff and other putative class members, through written representations and omissions made by Defendant and its employees, that the Class Products would be oil-free.

66. Defendant knew that the Class Products did in fact contain oils.

67. Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that contained oils contrary to the Products packaging.

68. The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendant persists and

continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**SECOND CAUSE OF ACTION**
**Violation of Unfair Business Practices Act**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**

69. Plaintiff incorporates by reference each allegation set forth above.

70. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

**UNFAIR**

71. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and

unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

72. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

73. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them fraudulently labeled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Sub-Class.

74. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class Products were oil-free, in order to induce them to spend money on said Class Products. In fact, knowing that Class Products, by their objective terms contained oils, unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiff would receive from this feature is nonexistent, when this is typically never the case in situations involving ingredients said to be excluded from a product. Thus, the injury suffered by Plaintiff and the members of the Sub-Class is not outweighed by any countervailing benefits to consumers.

75. Finally, the injury suffered by Plaintiff and members of the Class and

Sub-Class is not an injury that these consumers could reasonably have avoided. After Defendant, falsely represented that Class Products would be oil-free, the Plaintiff, Class members, and Sub-Class Members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiff and class members that the Class Products contained oils, including intentionally mislabeling the Products by labeling them as oil-free. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase products containing oils. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

76. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

77. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

78. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

79. Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products under the basic assumption that they were oil-free even though the Products contained oils. Plaintiff's reliance upon Defendant's deceptive statements is

reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

80. As explained above, Defendant deceived Plaintiff and other Class Members by representing the Class Products as oil-free when the Products contained oils.

81. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

82. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

83. As explained above, Defendant deceived Plaintiff and other Class Members by representing the Class Products as oil-free, when the Products contained oils.

84. Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq. Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

85. These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

86. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to

Business and Professions Code section 17203, Plaintiff and Class Members seek an order for public injunctive relief requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**COUNT III**
**Violation of Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750 et seq.)**
**On behalf of the class and sub-class**

87. Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 56 above as if fully reiterated herein.

88. Defendants' actions as detailed above constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1770, to the extent that Defendants violated the following provisions of the CLRA:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; Cal. Civ. Code § 1770(5);
b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; Cal. Civ. Code § 1770(7);
c. Advertising goods or services with intent not to sell them as advertised; Cal. Civ. Code §1770(9);
d. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; Cal. Civ. Code §1770(14); and
e. Representing that the subject of a transaction has been supplied in

accordance with a previous representation when it has not; Cal. Civ. Code §1770(16);

89. Pursuant to *Cal. Civ. Code. §1782(d)* Plaintiff brings this CLRA action seeking injunctive relief on behalf of the general public. On or about January 13, 2025, through his Counsel of record, using certified mail with a return receipt requested, Plaintiff served Defendant with notice of their violations of the CLRA, and asked that Defendant correct, repair, replace, or otherwise rectify the goods and services alleged to be in violation of the CLRA; this correspondence advised Defendant that it must take such action within thirty (30) calendar days, and pointed Defendant to the provisions of the CLRA that Plaintiffs believe to have been violated by Defendant. Defendant has not offered to resolve these claims on a class wide basis, and thus refused to adequately correct, repair, replace, or otherwise rectify the issues raised therein

**MISCELLANEOUS**

90. Plaintiff and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

**REQUEST FOR JURY TRIAL**

91. Plaintiff requests a trial by jury as to all claims so triable.

**PRAYER FOR RELIEF**

92. Plaintiff, on behalf of himself and the Class, requests the following relief:

(a) An order certifying the Class and appointing Plaintiff as Representative of the Class and Sub-class;

(b) An order certifying the undersigned counsel as Class and Sub-Class Counsel;

(c) An order requiring Defendant, at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(d) An order for public injunctive relief prohibiting Defendant from continuing the conduct described herein or engaging in similar conduct in the future;

(e) An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above;

(f) Actual damages suffered by Plaintiff and Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class Members from the sale of mislabeled Class Products during the relevant class period;

(g) Any and all statutory enhanced damages;

(h) All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(i) Pre- and post-judgment interest; and

(j) All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

Dated: April 3, 2026 Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN , PC

By: *_/s/ Todd M. Friedman_*
Todd M. Friedman
Attorney for Plaintiff

## PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. On April 3, 2026, I served a true copy of the First Amended Class Action Complaint on all counsel of record via the ECF Filing System:

Executed on April 3, 2026.

[X] I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

[ ] I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

[X] I hereby certify under the penalty of perjury that the foregoing is true and correct.

By: /s/ Todd M. Friedman
Todd M. Friedman, Esq.
Attorney for Plaintiff